UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BIALO,

          Plaintiff,                 Case No. 2:17-cv-12384
                                       District Judge Nancy G. Edmunds
v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

          Defendant.
_____/

**<u>REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT IN PART (DE 15), DENY
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 16) and
REMAND THIS MATTER TO THE COMMISSIONER</u>**

I.    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment **IN PART** (DE 15), **DENY** Defendant's motion for summary judgment

(DE 16), **REVERSE** the Commissioner's decision, and **REMAND** this case to the

Commissioner and the ALJ <u>under Sentence Four</u> of § 405(g) for further

consideration consistent with the report below.

II.    **REPORT**

       Plaintiff, David Bialo, brings this action under 42 U.S.C. §§ 405(g),

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his applications for disability insurance (DI) and supplemental security income (SSI) benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 15), the Commissioner's cross-motion for summary judgment (DE 16), and the administrative record (DE 11).

### A.   Background and Administrative History

Plaintiff alleges that his disability began on January 15, 2009, at the age of 35.  (R. at 154, 162, 171, 173.)  In his April and May 2014 disability reports, he lists several conditions (including ulcerative colitis, high blood pressure, back problems, pain, misaligned spine, asthma, diabetes, depression, bipolar disorder, and frequent bathroom trips) that limit his ability to work.  (R. at 198, 211.)  His applications were denied on August 1, 2014.  (R. at 67-84, 88-106.)

On September 10, 2014, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 107-108.)  On January 15, 2016, ALJ John Dodson held a hearing, at which Plaintiff and a vocational expert (VE), Helen Topcik, testified.  (R. at 29-66.)  ALJ Dodson issued an opinion on March 24, 2016, which determined that Plaintiff was not disabled within the meaning of the Social Security Act (SSA).  (R. at 8-28.)

On May 16, 2016, Plaintiff submitted a request for review of the hearing decision/order.  (R. at 150-153.)  However, on May 22, 2017, the Appeals Council

denied Plaintiff's request for review, noting that the 13 pages of medical records from PrimeCare of Novi dated August 22, 2014 to January 24, 2015 "d[id] not show a reasonable probability that it would change the outcome of the decision." Thus, the AC "did not consider and exhibit this evidence."  (R. at 2.)  At that point, ALJ Dodson's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on July 24, 2017.  (DE 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 142 pages of medical records, which were available to the ALJ at the time of his March 24, 2016 decision.  (R. at 28, 242-383 [Exhibits 1F – 7F].)  In addition, Plaintiff submitted 13 pages of material, as previously described, which were available to the Appeals Council but not "exhibited."  (R. at 2.)  Finally, given the Sentence Six posture of Plaintiff's motion, he attaches additional materials for the Court's consideration, including, *inter alia*, the missing page to Exhibit 7F (DE 15-3) and the September 19, 2016 physical medical source statement of Marshall Sack, D.O. (DE 15-4). These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2009, the alleged onset date.  (R. at

3

13.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:

lumbar spondylosis, asthma, chronic obstructive pulmonary disease (COPD),

diabetes mellitus, obesity, colitis, anxiety and depression.  (*Id*. at 13-14.)  At **Step**

**3**, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed

impairments.  (*Id*. at 14-17.)  **Between Steps 3 and 4** of the sequential process, the

ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined

that Plaintiff had the RFC:

> . . . to perform light work . . . except that he:  should not climb ropes,
> ladders, or scaffolds; could occasionally climb ramps and stairs,
> balance, stoop, kneel, crouch, and crawl; should have no concentrated
> exposure to vibrations, hazards, shifting or uneven terrain, or
> pulmonary irritants; could do unskilled, one to three step, repetitive
> tasks; and could not do production like standards[.]

(*Id*. at 17-23.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 23.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform.

(*Id*. at 24.)  The ALJ therefore concluded that Plaintiff had not been under a

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

disability, as defined in the SSA, from January 15, 2009 through the date of the decision.  (*Id.*)

## D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the SSA, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff requests a Sentence Six remand for evidence that is missing from the Administrative Record (DE 15 at 10-17) and contends that the ALJ erred in concluding that Plaintiff is capable of performing substantial gainful activity (DE 15 at 17-22). The Commissioner argues that there is no basis for remand under Sentence Six of Section 205(g) of the SSA (DE 16 at 5-13) and the ALJ properly

determined that Plaintiff could perform substantial gainful activity (DE 16 at 13-23).

### 1.    Sentence Six

Plaintiff's Sentence Six argument is based upon 3 sets of evidence that are not part of the administrative record filed with this Court on December 11, 2017. (*See* DE 15 at 10-17.)  In a Sentence Six remand, "[t]he district court does not affirm, modify, or reverse the Secretary's decision[,]" and "it does not rule in any way as to the correctness of the administrative determination."  *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  Rather,

> . . . the court remands because *new evidence* has come to light that was *not available* to the claimant at the time of the administrative proceeding and that evidence *might have changed the outcome* of the prior proceeding. . . . The statute provides that following a sentence six remand, the Secretary must return to the district court to "file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based." 42 U.S.C. § 405(g).

*Melkonyan*, 501 U.S. at 98 (internal citation omitted) (emphases added).

"[W]here new evidence is presented after the administrative hearing is closed, the 'court can remand for further consideration of the evidence only where the party seeking remand shows that the new evidence is *material*.'" *Snider v. Comm'r of Soc. Sec.*, 328 F. Supp. 2d 703, 710 (E.D. Mich. 2004) (quoting Wyatt v. *Secretary of Health and Human Services,* 974 F.2d 680, 685 (6th Cir.1992))

(emphasis added).  "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

"To obtain a sentence-six remand, a claimant has the burden to establish that there is (1) new evidence; (2) which is material; and (3) that there is good cause for the failure to submit it to the ALJ."  *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013).

### a.    PrimeCare of Novi (August 22, 2014 – January 24, 2015)

Plaintiff begins with the August 10, 2016 submission of records from PrimeCare of Novi dated August 22, 2014 – January 24, 2015 (DE 15-2) (14 pages).  (*See* DE 15 at 11-12.)  Having been submitted on August 10, 2016, it is clear to the Court that these records were not before the ALJ at the time of his March 24, 2016 decision.  However, excluding the cover page, the Court assumes these are the same 13 pages that were before the Appeals Council and as to which the AC stated:  "We find this evidence does not show a reasonable probability that it would change the outcome of the decision.  We did not consider and exhibit this evidence."  (R. at 2.)  Frankly, the Court finds the AC's treatment of the evidence –

making a finding and then saying it would not consider it – to be a bit bizarre.  It obviously *did* consider it, but rejected it.

In Plaintiff's opinion, these records provide "verification that David Bialo had consistent problems with respiratory and infection issues, which cumulatively would have given credibility to David's testimony as to how these problems affected his ability to work[,]" and Plaintiff attempts to show why this is the case. (DE 15 at 11-12.)  However, even if the Court were inclined to consider the newness or materiality of this material, let alone the strange nature of the AC's comment, Plaintiff's statement of error does not address the good cause requirement as to these records.  As the Commissioner correctly points out, "Plaintiff fails to provide any explanation for why those records were not submitted to the ALJ[.]"  (DE 16 at 6; *see also* DE 15 at 11-12.)  "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984) (per curiam)).  Plaintiff has not shown that "there is good cause for the failure to submit it to the ALJ[,]" *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013).  Therefore, even if they were new and material, Plaintiff is not entitled to a Sentence Six remand for consideration of the PrimeCare of Novi records.

### b.    Missing page of Dr. Tripi's January 14, 2016 "psychological assessment and employability evaluation" report

#### i.    The record in question

Plaintiff next addresses Elaine Tripi, Ph.D.'s January 14, 2016 "psychosocial assessment and employability evaluation" report, which was 8 pages in length. (DE 15-3 at 3-10.)  As Plaintiff points out, Exhibit 7F of the administrative record is missing Page 2 of that report, which includes Dr. Tripi's "diagnosis" and "summary and conclusion" sections.  (DE 15 at 12-13, R. at 377-383 [Exhibit 7F].)

Preliminarily, the Court should consider whether this missing page constitutes "new" evidence.  By way of background, Plaintiff submitted Dr. Tripi's January 14, 2016 report after the January 15, 2016 hearing, but before the ALJ's decision.  (R. at 11; *see also* R. at 31-32, 65-66.)  Indeed, the ALJ expressly cited this exhibit within his Step 3 and RFC discussions.  (R. at 16, 20-22.)  For example, the ALJ stated:

> In January 2016, shortly before the claimant's hearing in this matter, Elaine Tripi, Ph.D., evaluated the claimant (Exhibit 7F/l, 4 [R. at 377, 380]).  The record does not indicate that  Dr. Trip administered a mental health assessment.  Rather, based solely on an interview with the claimant, she diagnosed him with major depressive disorder, recurrent, severe (Exhibit 7F/3 [R. at 379]).  Dr. Tripi also noted that the claimant was unable to work and was alienated from others due to his health and financial issues (Exhibit 7F/3 [R. at 379]).

(R. at 20.)  Ultimately, the ALJ assigned it "little weight[,]" explaining that . . .

> Dr. Tripi's evaluation was based on a one-time interview with the claimant.  Thus, she had no longitudinal or treating relationship with him.  *Additionally, she offered no narrative to support her assessment.*  Finally, her opinion appears to be largely based on the claimant's subjective complaints, and *not on any clinical observations or findings*.

(R. at 22 (emphases added).)

Citing these two portions of the ALJ's opinion, and noting that Page 2 of the report is missing from the administrative record, Plaintiff surmises that the ALJ did not have "the benefit of reading page two of Dr. Tripi's report[,]" which explains that her opinion is "[b]ased on [her] clinical interview, observations and review of medical records," and notes that "[i]n preparing this report, [she] did have the opportunity to review records from Mr. Bialo's treating physician, Dr. Sacks, dated March 30, 2015 through December 31, 2015, and October 7, 2014 through February 17, 2015."  (DE 15 at 12-13, DE 15-3 at 4.)  It appears that the ALJ did not have the missing record available and either:  (1) did not know it was missing; or, (2) knew it was missing and went ahead and decided the question without taking steps to obtain it.  If the latter, the Commissioner would have to concede the untenable position of the ALJ having *ignored* the obvious gap in the record.[2]  In either case, the record was incomplete and Plaintiff's right to a fair hearing on a

---

[2] If the ALJ knew of such a deficiency, there is no indication that he "determine[d] the best way to resolve the…insufficiency[,]" for example, by requesting the missing record or asking the Plaintiff or others to submit it, as contemplated by 20 C.F.R. § 404.1520b(c).

complete record has been compromised.  The Court agrees with Plaintiff and concludes that the ALJ's conclusions about Dr. Tripi's report belie the position that the ALJ was in possession of Page 2.

### ii.  Newness and availability

Notwithstanding Plaintiff's request for a Sentence Six remand, the Court questions whether this is "new" evidence, even though it does not appear to have been part of the record before the ALJ.  As the Supreme Court has stated, "the court remands because *new evidence* has come to light that was *not available to the claimant* at the time of the administrative proceeding . . . ."  *Melkonyan*, 501 U.S. at 98 (emphases added).    There is no showing, nor is there reason to believe, that Page 2 was not "available" at the time of hearing.  Presumably it could have been obtained for the asking, if its absence had been flagged.

### iii.    Materiality

Still, there is little question about the missing page's materiality.  The Commissioner admits that "[u]nder most circumstances, the ALJ's failure to review the complete psychological evaluation report would be harmful to the claimant[,]" but maintains that "all the relevant information" was also set forth in Dr. Tripi's "*Mental* [RFC] Assessment" form.  (DE 16 at 9-10, R. at 379-382 (emphasis added).)  True, the missing Page 2 begins with a continuation of the "current symptoms" section, but the missing paragraphs mainly relate to *physical*

issues, although there is also mention of "mood disorder with anxiety." (*Compare* DE 15-3 at 4, R. at 379.) Also, most of the items listed in the missing "diagnosis" section are repeated on Dr. Tripi's mental RFC assessment form, but the latter omits Dr. Tripi's diagnosis of, among other things, "mood disorder with anxiety." (*Id.*) However, notwithstanding the Commissioner's observation that Dr. Tripi's missing "summary and conclusion" contains the opinion that Plaintiff was not "capable of sustaining or maintaining substantial, gainful work activity[,]" (DE 15-3 at 4), which "would not have been entitled to any weight . . . [,]" (DE 16 at 10),[3] the Court cannot ignore that two of the ALJ's three reasons for discounting Dr. Tripi's opinion – "she offered no narrative to support  her assessment[,]" and her opinion does not appear to be based "on any clinical observations or findings[,]" (R. at 22), were likely upended by the language on the missing Page 2. Although the Commissioner attempts to mitigate this damage by stating that "there are no mental status examination findings anywhere in her report[,]" (DE 16 at 11), the Court should conclude that the missing page's material may have caused the ALJ to assign more than "little weight" to Dr. Tripi's opinion, which, in turn, may have altered the ALJ's RFC assessment. (*See* DE 15 at 13.)

---

[3] *Citing Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to Dr. Dhar's opinion because her conclusion that Cosma is totally disabled is a determination reserved to the Commissioner[.]").

### iv.     Good cause

Finally, there appears to be good cause for the timing of Plaintiff's "missing

Page 2" argument.  The ALJ's March 24, 2016 opinion lists Exhibit 7F without

describing the number of pages.  (R. at 28).  Thus, at that time, Plaintiff had no

reason to know that a page was missing.  Nor is it clear whether Plaintiff would

have known to update the record before the AC rendered its May 22, 2017

decision.  It seems to the Court that Plaintiff may not reasonably have known of

the missing page until December 11, 2017, at which point the Commissioner filed

the administrative record / transcript in this case.  (DE 11.)  Therefore, it makes

sense that the issue of the missing page was first raised in Plaintiff's instant,

February 26, 2018 motion for summary judgment with the corresponding

attachment.  (DE 15-3.)

In sum, even if the material is not "new" as contemplated for a Sentence Six

remand, Plaintiff has shown that the missing Page 2 is material, and there is good

cause for Plaintiff having failed to raise this issue before bringing it to this Court.

### v.     Appropriateness of a Sentence Four remand

 As the Sixth Circuit has explained:

> The Commissioner is required to provide "good reasons" for
> discounting the weight given to a treating-source opinion. *Id.* §
> 404.1527(c)(2).  These reasons must be "supported by the evidence in
> the case record, and must be sufficiently specific *to make clear to
> any subsequent reviewers* the weight the adjudicator gave to the
> treating source's medical opinion and the reasons for that weight."

> Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996).  This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (emphasis added).  Here, even though Dr. Tripi appears to have been a one-time examiner, *i.e.*, not a treating source, it is not "clear to this subsequent reviewer" whether this critical page was "available" to the ALJ.  And, even though Plaintiff frames his argument as one based on Sentence Six, "sentence four of § 405(g) contemplates the type of remand involved in the present case—a remand after a final decision by the district court reversing the denial of benefits by the Secretary in order to correct an error by the Secretary in applying the regulations even if the rehearing to correct the error requires the taking of additional evidence."  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing *Sullivan v. Finkelstein,* 496 U.S. 617, 625–626 (1990).  Having shown an error in the record that may well have had a material effect on the ALJ's decision, Plaintiff is entitled to a Sentence Four remand as to Page 2 of Dr. Tripi's report.  On remand, the ALJ should explain whether the missing Page 2 was before him and whether he considered it.  If so, the ALJ should explain how this information factors into his analysis and the assignment of weight to Dr. Tripi's opinion.  If <u>not</u>, the ALJ must obtain the missing record or invite Plaintiff to correct the record, *see*, *e.g.*, *Cash v. Comm'r of*

*Soc. Sec.*, No. 4:16-CV-01635-JHE, 2018 WL 1463695, at *5 (N.D. Ala. Mar. 23, 2018) (granting Plaintiff's motion to correct the record), and re-evaluate the evidence in light of this more complete record.

### c.    Marshall Sack, D.O.'s September 19, 2016 "physical medical source statement"

While the administrative record contains many office treatment records from Marshall Sack, D.O. (*see*, *e.g.*, R. at 314-325 [Exhibit 4F], 338-373 [Exhibit 5F]), Plaintiff specifically discusses what is missing from the record - Marshall Sack, D.O.'s 8-page September 19, 2016 physical medical source statement (MSS) (DE 15-4).  (DE 15 at 14-17.)

This material is "new" in that it was not available to either the Plaintiff or the ALJ at the time of his decision.  Clearly, Dr. Sack's statement post-dates the ALJ's March 24, 2016 hearing decision.  As for materiality, at least one leading treatise has explained:

> . . . in order to convince a federal judge that evidence is material, the claimant may have to do more than simply submit medical records or reports which *post-date* the hearing, since such a submission, standing alone, will be insufficient to satisfy the materiality requirement. The claimant will have to show the district judge exactly how the new evidence relates to her medical condition *at the time of the hearing*.

*Kubitschek and Dubin, Social Security Disability, Law and Procedure in Federal Court* § 9:60 (2016) (emphases added).  To this end, Plaintiff does make statements about the relationship of the MSS to the record evidence – *e.g.*, that Dr.

16

Sack's September 19, 2016 physical MSS "relates to the period considered by the ALJ[,]" and that Dr. Sack's materials currently in the administrative record "form the basis for [his] conclusions regarding David's physical capabilities[,]" (DE 15 at 15).  Moreover, Plaintiff claims this record "refutes the ALJ's assertion that no doctor documented David's need for a cane."  (DE 15 at 14.)[4]

Nonetheless, even if Plaintiff has shown that Dr. Sack's MSS was both new and material, Plaintiff must still show that "there is good cause for the failure to submit it to the ALJ."  *Lee*, 529 F. App'x at 717.  According to Plaintiff, the form was forwarded to Dr. Sack prior to the administrative hearing, but "it took several months for the doctor to finally complete the form and return it to [counsel's] office, in September 2016."  (DE 15 at 14.)  Meanwhile, on July 19, 2016, the AC granted Plaintiff's request "for more time before we act on your case[,]" and required that "[a]ny more evidence must be new *and* material . . . [,]" and sent "within 25 days of the date of this letter[,]" *i.e.*, August 13, 2016.  (R. at 6.)  As noted above, it appears that Plaintiff provided the AC with the PrimeCare of Novi

_____

[4] For example, the ALJ expressly stated, *inter alia*:  (i) "Although the claimant testified that he uses a cane, none of his providers prescribed it[;]" (ii) "The claimant uses a cane, although none has been prescribed[;]" and, (iii) "The claimant reports using a cane, however, a healthcare provider  never prescribed one."  (R. at 14, 18, 21.)  By comparison, in the September 19, 2016 statement, Dr. Sack opined that Plaintiff "must . . . use a cane or other hand-held assistive device" while "engaging in occasional standing/walking," and indicated that "the need for a cane" was caused by Plaintiff's imbalance and pain.  (DE 15-4 at 6.)

records on August 10, 2016; yet, it seems she did not provide the AC with Dr.

Sack's September 19, 2016 statement prior to the AC's May 22, 2017 decision,

likely because the 25-day period had expired.  (*See* R. at 2).

The record reflects that, at the January 15, 2016 administrative hearing,

Plaintiff's counsel expressed her belief that Dr. Sacks's specialties were psychiatry

and neurology.  (R. at 31.)  Counsel then explained that she referred Plaintiff for a

psychological evaluation, it had taken place the day before with Dr. Tripi, counsel

was waiting for the evaluation, and counsel sought time to submit it.  (R. at 32.)

The ALJ agreed and then began to question about medications prescribed by Dr.

Sacks.  (*Id*.)  In addition, at the close of the hearing, the ALJ stated that he wanted

to see Dr. Tripi's report, agreed to give Plaintiff 30 days to submit it, and also

agreed to accommodate Plaintiff if Dr. Tripi "takes longer than that[.]"  (R. at 65.)

Thus, it may have been reasonable for Plaintiff to believe that the ALJ would make

a similar accommodation with respect to *Dr. Sack's* tardy report, *if requested*.

However, Plaintiff does not claim to have sought a related extension of time to

submit Dr. Sack's MSS.  (*See* DE 15 at 17.)  *See Bass v. McMahon*, 499 F.3d 506,

513 (6th Cir. 2007) ("plaintiff's counsel did not seek to have the record remain

open to submit the evidence here provided, which in and of itself shows a lack of

good cause.").  Thus, Plaintiff's "good cause" argument is unavailing.  (DE 15 at

17.)  Therefore, even if Dr. Sack's MSS is both new and material, Plaintiff has not

shown good cause for her failure to timely submit Dr. Sack's MSS, and she is not entitled to a Sentence Six remand for consideration of the September 19, 2016 opinion.

### 2.   Treatment of opinion evidence and 20 C.F.R. §§ 404.1527, 416.927

Plaintiff also contends that the ALJ erred in concluding that Plaintiff "is capable of performing substantial gainful activity."  (DE 15 at 17.)  This statement of error, *inter alia*:  **(a)** questions the weight assigned to Dr. Tripi's opinion; **(b)** points to the ALJ's statement that "there was no evidence of ongoing mental health treatment with a therapist or a psychiatrist[,]" (R. at 20), while also noting that Dr. Sack specializes in family medicine, as well as *psychiatry* (*see* DE 15-5), a point that was mentioned at the hearing (R. at 31); **(c)** suggests that the ALJ should have further developed the record upon receiving Dr. Tripi's report; and **(d)** notes that the ALJ was without Dr. Sack's physical MSS (DE 15-4).  (*See* DE 15 at 17-22.) The Commissioner contends that "[t]he ALJ properly determined that Plaintiff could perform substantial gainful activity."  (DE 16 at 13-23.)  Nonetheless, given the above conclusion that Plaintiff is entitled to remand with respect to the missing page of Dr. Tripi's report, the Court need not address Plaintiff's second statement of error.  On remand, the ALJ may re-examine and re-open the record on this issue based on Plaintiff's criticisms, as the ALJ deems appropriate.

### F.   Conclusion

Plaintiff has shown legal error that may upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment **IN PART** (DE 15), **DENY** Defendant's motion for summary judgment (DE 16), **REVERSE** the Commissioner's decision, and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with the report above.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  January 23, 2019                      s/*Anthony P. Patti*
                                              Anthony P. Patti
                                              UNITED STATES MAGISTRATE JUDGE



## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record
on January 23, 2019, electronically and/or by U.S. Mail.

                                    s/Michael Williams
                                    Case Manager for the
                                    Honorable Anthony P. Patti